UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WASTE CONNECTIONS OF RHODE ISLAND, INC. d/b/a LINK ENVIRONMENTAL,<br><br>           Plaintiff,<br><br>v.<br><br>RONALD J. SOUTO d/b/a RJ SOUTO DISPOSAL SERVICES,<br><br>           Defendant. | Civil Action. No. |

## VERIFIED COMPLAINT

Plaintiff, Waste Connections of Rhode Island, Inc., d/b/a Link Environmental, ("Plaintiff") brings this action against Defendant, Ronald J. Souto d/b/a RJ Souto Disposal Services ("Defendant"), and for its Verified Complaint Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. This action arises from the Defendant's failure to pay Plaintiff for use of Plaintiff's solid waste transfer station, and related services, in Pawtucket, Rhode Island. All told, Defendant owes Plaintiff $275,625.55. The vast majority of this amount represents amounts that Defendant purported to pay to Plaintiff via personal check; however, those checks were returned unpaid by the banks on which they were drawn. In 2020, Plaintiff tendered fifty-four (54) bounced personal checks in amounts totaling approximately $265,000.

## PARTIES AND JURISDICTION

2. Plaintiff, Waste Connections of Rhode Island, Inc. is a corporation organized under the laws of Delaware. Its principal office is located at 3 Waterway Square Place, Suite 110, The Woodlands, Texas 77380. Plaintiff uses the trade name Link Environmental. Plaintiff

operates a solid waste transfer station at 240 Grotto Avenue in Pawtucket, Rhode Island (the "Transfer Station").

3. Upon information and belief, Defendant, Ronald J. Souto is a natural person with a residence located at 49 Winter Drive, Seekonk, Massachusetts 02771. Mr. Souto does business as RJ Souto Disposal Services and is in the business of performing residential and/or commercial waste hauling and disposal services.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the Parties to this action are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(1) and R.I. Gen. Laws § 9-5-33, as this action arises from services rendered and instruments given in Pawtucket, Rhode Island.

6. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b), because a substantial number of the events, acts, or omissions giving rise to the claims alleged in this complaint occurred within the District of Rhode Island.

## FACTUAL ALLEGATIONS

### The Parties' Business Dealings

7. For years, Defendant has utilized Plaintiff's Transfer Station on a regular basis to dispose of solid waste obtained in his waste hauling and disposal business. Defendant's company would often dispose of multiple truckloads—generally more than one but less than ten—of waste per day at the Transfer Station.

8. The charge for a given truckload of solid waste is determined by the weight of the disposed material. When a customer seeks to dispose of waste at the Transfer Station, the

customer's vehicle is weighed upon entering the Transfer Station and again upon departing the Transfer Station.  The difference is the weight of the disposed waste.  That weight, when multiplied by the applicable rate for the type of waste, determines the amount owed per truckload.  Depending on the type of material disposed, other incidental fees may also be charged.

9. Plaintiff creates a "ticket" for each disposal transaction which sets forth the date, time, weight, and other relevant data for each truckload.  This information is used for billing purposes.  Plaintiff routinely records and maintains these "tickets" in the ordinary course of its business.  A sample ticket is attached as Exhibit 1.

## Unpaid Credit Balance

10. Prior to 2018, Defendant was deemed to be an acceptable credit risk for Plaintiff.  As a result, Plaintiff allowed the Defendant to pay for services on account with 60 day payment terms.  Periodically, Plaintiff would send to Defendant invoices setting forth the charges incurred.  Each "ticket" would appear as a separate line item on the invoice, representing a discrete waste disposal transaction occurring during the period covered by the invoice.  Any partial payments made towards the invoiced amount would also appear on a given invoice.

11. Eventually, in 2018 or 2019, Defendant's account fell into serious delinquency and accrued a past-due balance in excess of $250,000.  Although Defendant has paid down most of the past-due balance, there still remains an unpaid balance.  That balance is reflected in Invoice No. 24 in the amount of $5,104.13.  A true and accurate copy of that invoice, reflecting payments through the date of this Verified Complaint, is attached hereto as Exhibit 2.

**After Plaintiff Began To Require Payment-On-Delivery,
Defendants Began Tendering Checks For Payment That Ultimately Bounced**

12.     As a result of past delinquencies, Plaintiff required "payment-on-delivery" terms for Defendant's disposal of solid waste at Plaintiff's Transfer Station in 2020. In particular, at the end of each business day, after all of the day's truckloads were disposed at the Transfer Station, Plaintiff requested payment for the sum of all charges as shown on that day's tickets, which typically reflected multiple truckloads of waste in a given day. Each day, Defendant tendered a check for the sum of the day's tickets.

13.     For example, on January 11, 2020, Defendant utilized the Transfer Stations to dump six truckloads of waste. Plaintiff recorded six corresponding tickets which included the following information:

| NetWeight (Tons) | Rate Per Ton | Dollars |
|---|---|---|
| 13.58 | 106.00 | $1444.48 |
| 9.67 | 106.00 | $1030.02 |
| 6.64 | 106.00 | $708.84 |
| 10.62 | 106.00 | $1130.72 |
| 1.33 | 106.00 | $145.98 |
| 3.69 | 106.00 | $396.14 |

The total of the charges set forth above is $4,856.18. Plaintiff's records show that on January 11, 2020, Defendant tendered to Plaintiff Check No. 15935 drawn on BayCoast Bank Account No (XXXXX 7581) in the amount of $4,856.18 to pay for that day's disposal transactions.

14.     Plaintiff subsequently learned that Defendant's banks (to-wit, Bay Coast Bank and Citizens Bank) did not honor many of the checks that Defendant tendered for disposal of solid waste at Plaintiff's Transfer Station. Five checks drawn on BayCoast Bank were returned in February 2020 due the associated account having been closed. The remainder were returned

for insufficient funds. Attached as Exhibit 3 are 54 notifications of returned payments from Defendant which were sent to Plaintiff by its bank, Bank of America.

15. On occasion, the fact of a returned check was made known to Plaintiff's personnel at the Transfer Station. When this happened, the Plaintiff's personnel would contact the Defendant and request a replacement payment (usually a certified check).

16. In the event that Plaintiff became aware that a check tendered by Defendant was returned unpaid by Defendant's bank, Plaintiff would also generate an invoice in its billing system to reflect the amount of money Defendant owed to Plaintiff on account of the returned payment. The Invoice would reflect not only the amount represented by the returned check, but also any bank charges that Plaintiff incurred on account of the returned payment.

17. For example, on or about February 19, 2020, Plaintiff became aware that Defendant had bounced Check No. 15999, dated February 10, 2020 and drawn on BayCoast Bank Account No (XXXXX 7581), due to insufficient funds.

18. On February 20, 2020, Plaintiff emailed Defendant to provide Defendant with notice that his check was dishonored. A true and accurate copy of that email and the bounced check notification are attached hereto as Exhibit 4.

19. Plaintiff also created Invoice No. 956 to reflect the return of Check No. 15999 unpaid.

20. Defendant has not fully repaid the sums reflected in Invoice No. 956. Similarly, Defendant has not fully repaid the sums reflected in Invoices 870 and 1018, which also represent bounced checks and bank fees which have only been repaid in part. The outstanding balances shown on Invoices No. 870, 956, and 1018, which are attached collectively as Exhibit 5, reflect all payments made through the date of this Verified Complaint.

**An Internal Investigation Reveals That Defendant Tendered
Hundreds Of Thousands Of Dollars' Worth Of Unpaid Checks**

21. Despite Plaintiff's efforts to promptly rectify any instances of dishonored payments, personnel at the Transfer Station were not always made aware of the fact of Defendant's returned payments. As a result, a high number of returned or "bounced" checks accumulated during the course of 2020 for which a replacement payment was not immediately sought by Plaintiff nor tendered by Defendant.

22. On or prior to October 31, 2020, Plaintiff's Operations Manager at the Transfer Station, Angelo Calcagni, learned about many bounced checks that Defendant had tendered to Plaintiff in August, September, and October 2020.

23. Mr. Calcagni informed Defendant about the bounced checks in an October 31, 2020 email, a true and accurate copy of which is attached as Exhibit 6. That October 31, 2020 email enclosed a new Invoice No. 1073 setting forth amounts owed, both for the returned payments and associated bank fees, on account of twenty-one (21) bounced checks given by Defendant to Plaintiff between August and October 2020. Invoice No. 1073 also includes amounts owed for three tickets totaling $3,634.89 for waste disposed on October 30, 2020.

24. Following the revelation of numerous bounced checks in late October 2020, Plaintiff conducted a review of its records of payments previously tendered by Defendant and determined that additional checks had been returned unpaid and were never replaced.

25. On December 5, 2020, Plaintiff issued Invoice No. 1823 which sets forth twenty-nine (29) additional returned and unreplaced payments spanning the period of February 2020 to October 2020. A true and accurate copy of Invoice No. 1823 is attached hereto as Exhibit 7.

26. On December 11, 2020, Plaintiff issued Invoice No. 1836 which sets forth four (4) additional returned and unreplaced payments occurring in January 2020. A true and accurate copy of Invoice No. 1836 is attached hereto as Exhibit 8.

27. In total, during the course of 2020, Defendant tendered a total of fifty-four (54) checks to the Plaintiff which were returned either because they were drawn on a closed account or, more often, were drawn on an account with insufficient funds.

28. Defendant has "bounced" checks from at least three different payment accounts, including BayCoast Bank Acct No. XXXXX 7581 which apparently is now closed, Citizens Bank Acct No. XXXX 3971, and Citizens Bank Acct. No. XXXX 5525).

## Summary of Amounts Owed

29. Defendant has not made a payment to Plaintiff since a payment in the amount of $1,000 was made on October 27, 2020, which reduced the balance on Invoice No. 24. This was before Plaintiff informed Defendant of the initial batch of twenty-one returned checks that had accumulated during the course of 2020.

30. The principal amounts owed as of the date of this Complaint, are as follows:

| **Description** | **Amount** | **Reference** |
|---|---|---|
| Balance of Defendant's Charge Account from pre-2020 disposal transactions. | $5,104.13 | See Invoice No. 24, Ex. 2. |
| Balance Arising from Bounced Check Nos. 15721 and 15722 | $99.97 | See Invoice No. 870, Ex. 5. |
| Balance Arising from Bounced Check No. 15999 | $10.00 | See Invoice No. 956, Ex. 5. |
| Balance Arising from Bounced Check No. 100 | $50.00 | See Invoice No. 1018, Ex. 5. |
| Balance arising from 3 truckloads of waste dumped on Oct. 30, 2020 | $3,634.89 | See Invoice No. 1753, included in Ex 6. |
| Balance Arising from 21 Bounced Checks Written Between Aug. 2000 and Oct. 2000 | $108,540.16 | See Invoice No. 1753, included in Ex. 6. |
| Balance Arising from 29 Bounced Checks Between Feb. 2000 and Oct. 2000 | $137,356.42 | See Invoice No. 1823, Ex. 7. |
| Balance Arising from 4 Bounced Checks in Jan. 2020 | $20,829.98 | See Invoice No. 1836, Ex. 8. |
| **TOTAL:** | **$275,625.55** | |

## COUNT I
### (Breach of Contract)

31. Plaintiff incorporates by reference the allegations set forth above in paragraphs 1 through 30 as if fully set forth herein.

32. Plaintiff and Defendant entered into an agreement in which Plaintiff would provide use of its transfer station and related services in exchange for payment.

33. Plaintiff performed its obligations by taking delivery of the solid waste that Defendant delivered to it at the Transfer Station.

34. Defendant has breached its contract with Plaintiff by failing to pay for services rendered when due and/or by tendering payment via check which was returned by the bank on which it was drawn.

35. As a result of Defendant's breach, Plaintiff has suffered damages in the amount of $275,625.55.

## COUNT II
### (Book Account)

36. Plaintiff incorporates by reference the allegations set forth above in paragraphs 1 through 35 as if fully set forth herein.

37. Plaintiff's books and records indicate that Defendant owes it $275,625.55 for use of its transfer station and related services rendered.

38. On numerous occasions, including October 31, 2020 (see Exhibit 6) and December 11, 2020 (see Exhibit 9), Plaintiff provided Defendant with a statement of account to which Defendant did not seasonably object.

39. The statement of account that Plaintiff provided to Defendant indicated that Defendant owes Plaintiff the sum of $275,625.55 for use of the Transfer Station and related services rendered.

40. Despite Plaintiff's demands, Defendant has failed to pay the amounts that it owes to Plaintiff.

## COUNT III
### (Unjust Enrichment)

41. Plaintiff incorporates by reference the allegations set forth above in paragraphs 1 through 40 as if fully set forth herein. To the extent necessary, this Count is pleaded in the alternative to the other Counts set forth above.

42. Plaintiff has conferred a benefit upon Defendant by permitting Defendant the use of its Transfer Station and related services rendered in connection with Defendant's waste hauling and disposal business.

43. Defendant appreciated the benefits that Plaintiff has conferred upon him.

44. It would be inequitable for Defendant to retain the benefit of those services without paying for their value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Waste Connections of Rhode Island, Inc., respectfully requests that this Honorable Court enter judgment against Defendant, Ronald J. Souto, d/b/a RJ Souto Disposal Services, as follows:

a. For compensatory damages in the principal amount of $275,625.55;

b. For prejudgment interest in accordance with G.L. 1956 § 9-21-10 at the statutory rate of twelve percent (12%) running from the date of demand (December 29, 2020) to the date of judgment;

c. For the costs of suit herein, including reasonable attorneys' fees pursuant to R.I. Gen. Laws § 9-1-45; and

    d.  For such other relief as the Court deems just and proper.

PLAINTIFF,

WASTE CONNECTIONS OF RHODE ISLAND, INC. d/b/a LINK ENVIRONMENTAL

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP


/s/ Daniel E. Burgoyne
Daniel E. Burgoyne (#7541)
Christian R. Jenner (#7731)
40 Westminster Street, Suite 1100
Providence, RI  02903
(401) 861-8200
(401) 861-8210 FAX
dburgoyne@psh.com
cjenner@psh.com

DATED:  February 10, 2021

## VERIFICATION

STATE OF _Rhode Island_ )
                           ) ss.:
COUNTY OF _Providence_ )

      I, Angelo Calcagni, hereby state under the penalty of perjury that (i) I am employed as Operations Manager for Plaintiff, Waste Connections of Rhode Island, Inc. d/b/a Link Environmental; (ii) I have read the foregoing Verified Complaint and know the contents thereof, and (iii) based on my personal knowledge and review of Plaintiff's business records, the allegations set forth above in paragraphs 2 through 30 are true and accurate and, as to the remaining allegations, I believe them to be true.

_____
Angelo Calcagni

On February _10_, 2021, before me, the undersigned notary public, personally appeared Angelo Calcagni, personally known to the notary or proved to the notary through satisfactory evidence of identification, which was __Angelo Calcagni__, who signed the preceding document in my presence and swore to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

_____
Notary Public
My Commission expires: _1-7-22_

MICHELE B. KETTLE
Notary Public, State of Rhode Island
Commission # 42586

3984950.2/30747-2

11